UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRED BOGUS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-30 (RCL) |
| RICHARD V. SPENCER[1] *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff, a federal prisoner appearing *pro se*, seeks review under the Administrative Procedure Act ("APA") of decisions rendered by the Board for Correction of Naval Records ("BCNR" or "Board"). Pending is Plaintiff's Motion for Summary Judgment, ECF No. 23, and Defendants' Motion to Dismiss Claim for Monetary Relief and Cross Motion for Summary Judgment of All Other Claims, ECF No. 26. Upon careful consideration of the parties' motions and related filings, and the Administrative Record ("AR"), ECF No. 26-1, the Court will deny Plaintiff's motion, deny Defendants' motion to dismiss as moot, and grant Defendants' cross-motion for summary judgment, for the reasons explained below.

---

[1] By substitution pursuant to Fed. R. Civ. P. 25(d). In addition to the Secretary of the Navy, Plaintiff has named Elizabeth Hill in her official capacity as the Executive Director of the Board for Correction of Naval Records. The APA generally authorizes the bringing of an action "against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703.

## I. BACKGROUND

### A. Military Service and Discharge

Plaintiff completed two honorable enlistments in the Navy from June 25, 1977 through April 12, 1981, and from April 13, 1981 through December 18, 1984. AR 6. On April 11, 1983, during his second enlistment, Plaintiff participated in an Alcohol Education Course. *Id*. Plaintiff reenlisted a third time on December 19, 1984. Less than two years later, on March 12, 1986, Plaintiff received non-judicial punishment ("NJP") for "drunkenness-incapacitation for performance of duties," in violation of Article 134 of the Uniform Code of Military Justice ("UCMJ").[2] AR 6, 92. Shortly after, Plaintiff was not recommended for advancement in rank "due to minor disciplinary infractions and a need for more development in leadership." AR 92.

From October 26, 1987, to December 4, 1987, Plaintiff was admitted to the Alcohol Rehabilitation Department at Naval Hospital Beaufort, South Carolina. AR 104. While there, he was selected for Petty Officer First Class. AR 93. Upon his discharge from the hospital, Plaintiff purportedly received a set of instructions that required him to, among other things, undergo a supervised Antabuse regimen daily for one year. AR 105. The "Recommendations" included a statement that "[m]ind/mood altering medications, in addition to alcohol are distinctly contraindicated and should be prescribed only very briefly, under close supervision, if at all." *Id*.

---

[2] 'Under the Uniform Code of Military Justice, military commanders can punish service personnel through judicial proceedings—taking the form of general, special, or summary courts martial—or by imposing non-judicial punishment ("NJP")." *Piersall v. Winter*, 507 F. Supp. 2d 23, 29 (D.D.C. 2007); *see* 10 U.S.C. § 815(b) ("[A]ny commanding officer may, in addition to or in lieu of admonition or remand, impose one or more [enumerated] disciplinary punishments for minor offenses without the intervention of a court-martial[.]"). However, "[a] member of the Navy may refuse non-judicial punishment and demand trial by a court martial unless he is "attached to or embarked in a vessel." *Piersall v. Winter*, 435 F.3d 319, 321 (D.C. Cir. 2006) (quoting 10 U.S.C. § 815(a)).

In January 1988, Plaintiff was issued a written warning in which he acknowledged that he was "being retained in the naval service" but needed to correct "deficiencies in [his] performance and/or conduct" involving "incidents of alcohol abuse." AR 84, 108. Plaintiff was provided "recommendations for corrective action . . . effective immediately," warned that further deficiencies in his performance and/or conduct could result "in disciplinary action and . . . processing for administrative separation," and told that "all deficiencies and/or misconduct during [his] current enlistment" would be considered in any such action. *Id*.

In May 1988, Plaintiff admitted to his division officer that he "had drank one beer." AR 100. Plaintiff also admitted to being "ticketed for a DUI" but added that "in court, on base, I proved I was not intoxicated." *Id*. Nevertheless, on June 1, 1988, Plaintiff received NJP for failure to obey a lawful order issued by the Navy Medical Department to abstain from drinking alcohol while on the Antabuse Program, in violation of Article 92 of the UCMJ. AR 93. Plaintiff's rank was reduced to Petty Officer Second Class, ECF No. 18-2 at 5. There is no record of him appealing the NJP. AR 93.

On June 2, 1988, Plaintiff's commanding officer issued a "Notice of a Notification Procedure Proposed Action," informing Plaintiff that he was "being considered for an administrative separation . . . by reason of Alcohol Abuse Rehabilitation Failure as evidenced by Commanding Officer's non-judicial punishment" on June 1, 1988. Ex. 4 to Am. Compl., ECF No. 18-2 at 6-7; AR 93. Plaintiff was told that if approved by the Commander, "the least favorable description" of his service would be "General." ECF No. 18-2 at 6. The notice listed the rights and privileges to which Plaintiff was entitled. By his signature on June 3, 1988, Plaintiff acknowledged receiving the notice and "understand[ing] its contents." ECF No. 18-2 at 7. In a separate document captioned "Statement of Awareness and Request for, or Waiver of

3

Privileges," signed (and witnessed) also on June 3, 1988, Plaintiff waived his rights to consult with an attorney, to appear before a discharge review board, and to object to the separation. Ex. 5 to Am. Compl., ECF No. 18-2 at 8-9; AR 10, 93. He was formally discharged from the Navy on June 10, 1988, under honorable conditions (General). AR 10, 93.

In March 1997, Plaintiff applied to the Naval Discharge Review Board ("NDRB") for review of his discharge and requested that it be changed to Honorable. AR 91. Plaintiff asserted, among things, that "[t]here was no evidence to show [that] he disobeyed a direct order . . . no proof whatsoever that [he] violated any rules or regulations[,] [and] [n]o medical reports reflect[ing] any type of profession testing for alcohol consumption." *Id*. In addition, Plaintiff pointed to the lack of "findings of guilt for P.I. or D.W.I.," claiming "[q]uite the contrary, we find a verdict of not guilty, absolving Bogus of any violation." AR 91-92. The NDRB found Plaintiff's assertion of an unlawful order "to have no basis in fact." AR 95. It cited the "retention warning" Plaintiff had signed and found that it "explicitly detailed what actions were expected," including "not drinking, taking Antibuse [sic], and attending AA meetings." Therefore, the NDRB concluded, "[w]hen the applicant subsequently drank alcohol, his very action constituted both a failure to rehabilitate and failure to obey a lawful order." *Id*. On May 28, 1997, after having "carefully examined all available official records in connection with" Plaintiff's application, the NDRB issued a "Notice of Decision that Discharge is Proper as Issued" and determined that "no change is warranted." AR 90. It enclosed the Record of Review, AR 91-97.

## B. Request for Corrective Action

### 1. Initial Request

On August 24, 2015, Plaintiff submitted a request to the BCNR for correction of his Naval Records and supplemented the request "with additional evidence" in June 2016. Pl.'s Summ. J. Mot. at 2. Plaintiff specifically requested an upgraded discharge, from General to Honorable, and removal of his 1988 NJP and reduction in rank. AR 81. A three-member panel of the BCNR fully denied Plaintiff's request on October 20, 2016, after considering his application, "all material submitted in support thereof," his naval record that included "the retention warning regarding incidents of alcohol abuse," and Plaintiff's "hand written additional information letter dated 23 June 2016, regarding due process." AR 15. The BCNR "carefully weighed all potentially mitigating factors, such as [Plaintiff's] record of service, desire to have [the] NJP . . . overturned, be reinstated to paygrade E-6, desire to upgrade [the] discharge and contention that [he was] never given notice that [he] had the right to request legal counsel." AR 16. But it concluded that those factors "were not sufficient to warrant overturning" the NJP or granting any other requested relief. The BCNR cited Plaintiff's "misconduct which resulted in two NJP's," the warnings he received "of the consequences of further misconduct," and his "failure to adhere to [his] command's alcohol rehabilitation program." *Id*. The BCNR further noted that upon receiving notice of the "administrative discharge action," Plaintiff waived his "right to consult with counsel and to present" his "case to an administrative discharge board (ADB)," which, according to the Board, was Plaintiff's "best chance for retention or a better characterization of service." *Id*.

### 2. Request for Reconsideration

On November 11, 2016, Plaintiff formally requested reconsideration of the denial of corrective action. AR 17. He asserted his belief that the BCNR erred because "by agreeing that my NJP was because of misconduct, [it] completely ignored the fact that it was not willful misconduct." AR 17 ¶ 6. Plaintiff posited that the Navy had "diagnosed me as being an alcoholic, as part of my disease I would naturally be prone to drink again," *id.*, "drinking alone was not misconduct," and "[d]rinking was what alcoholics do," AR 18-19. Plaintiff submitted additional evidence. *See* AR 31-32, 98-105. "The crux" of Plaintiff's request for reconsideration concerned (1) the medical summary prepared in December 1987 when Plaintiff was discharged from the alcohol treatment facility, and (2) "the use of" the retention warning for alcohol abuse to "end" his naval service, "and to discipline" him "by reduction of rank, . . . and for receiving a less than complete Honorable discharge with an RE-4 characterization." AR 98.

A three-member panel of the BCNR considered Plaintiff's "new assertion" in light of "the new evidence provided" and other "[d]ocumentary material," and fully denied the request for reconsideration on May 3, 2018, AR 6-7, after commencement of this civil action on January 4, 2018. The letter informed Plaintiff of his right "to have the Board reconsider its decision upon the submission of new and material evidence," absent which the decision was final and that Plaintiff's "only recourse would be to seek relief . . . from a court of appropriate jurisdiction." AR 8. Plaintiff filed the instant motion for summary judgment on January 24, 2019. Defendants filed their motion for summary judgment and the Administrative Record on February 25, 2019.

## II. LEGAL STANDARD

Under 10 U.S.C. § 1552(a)(1), "[t]he Secretary of a military department [acting through a civilian board] may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." Such corrections "shall be made under procedures established by the Secretary concerned." *Id.* § 1552(a)(3)(A). The "Secretary's decision to deny corrective relief is reviewable under the APA," *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989), and it "can be set aside if [it is] arbitrary, capricious or not based on substantial evidence[,]" *Chappell v. Wallace*, 462 U.S. 296, 303 (1983).

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007), *aff'd*, 408 Fed. App'x. 383 (D.C. Cir. 2010)); *see also Richards v. INS*, 554 F.2d 1173, 1177 n.28 (D.C. Cir. 1977). The APA requires a court to evaluate agency action by "review[ing] the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Under long-standing precedent, judicial review is ordinarily " 'confined to the administrative record.' " *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 10-11 (D.D.C. 2001) (quoting *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)). The Court's role is not to "duplicate agency fact-finding efforts" or "to engage in independent fact-finding." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996). Rather, it decides the "predominantly legal" question of whether "the agency [has] articulate[d] a rational connection

between the facts found and the choice made"? *Id.* (citation and internal quotation marks omitted).

It is on the agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). A court may not substitute its judgment for that of the agency, and it should "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 286 (1974)).

In the military context, courts must apply "an unusually deferential application of the arbitrary or capricious standard of the APA" to ensure that they "do not become a forum for appeals by every [soldier] dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007) (citations and internal quotation marks omitted); *see Kreis*, 866 F.2d at 1514 ("decisions of the [Air Force's] Board are reviewable under the APA, albeit by an unusually deferential application of the 'arbitrary or capricious' standard"). "This review does not dive deeply into the merits, being more concerned with whether the Secretary followed the prescribed procedures, considered all the evidence, and reached a result that it is not unreasonable." *Piersall v. Winter*, 507 F. Supp. 2d 23, 33 (D.D.C. 2007). The D.C. Circuit supposes that "only the most egregious decisions may be prevented under such a deferential standard of review." *Kreis*, 866 F.2d at 1515.

To defeat summary judgment, "[t]he plaintiff bears the burden of establishing that the agency's action violated the APA 'by providing cogent and clearly convincing evidence[,]' [and he] must 'overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith.'" *Mueller v. England*, 404 F. Supp. 2d 51, 55 (D.D.C. 2005) (quoting *Stem v. England*, 191 F. Supp. 2d 1, 3 (D.D.C. 2001), *aff'd sub nom. Mueller v. Winter*, 485 F.3d 1191 (D.C. Cir. 2007)).

## III. DISCUSSION

As an initial matter, Plaintiff has made it "crystal clear" that he is not seeking monetary relief. Mem. in Opp'n to Def.'s Mot. to Dismiss Claim at 1, ECF No. 33. Therefore, Defendants' motion to dismiss the claim for monetary relief is denied as moot.

In support of summary judgment, Defendants argue that the BCNR's decision "not to modify Plaintiff's military records was rationally related to the Administrative Record and therefore not arbitrary or capricious." Mem. at 11. The Court agrees.

In considering Plaintiff's request for reconsideration of the denial of corrective action, the BCNR reviewed Plaintiff's "most recent application based on the new evidence" and "relevant portions of [his] naval record and applicable statutes, regulations and policies." AR 6. As pertinent here, the BCNR accurately framed Plaintiff's contention "that the previous Board decision was predicated on an illegal NJP and the previous Board ignored the fact that you did not willfully commit misconduct." AR 7. The BCNR considered Plaintiff's various arguments, including those grounded upon the due process clause. *See id*.

The BCNR addressed Plaintiff's challenges to the validity of the discharge proceedings and "the waiver of [his] rights as signed on 3 June 1988." AR 7. Plaintiff requested "a copy of the waiver of . . . administrative separation rights" signed also on June 3, 1988, which the BCNR

9

could not produce because Plaintiff's "full administrative separate package [was] not reflected in the available service records." *Id*. However, the BCNR (1) reasonably "relied on information reflected in the Naval Discharge Review Board's (NDRB) review of [Plaintiff's] record, . . . the administrative review process and the available documents relating to both [Plaintiff's] separation from the Navy and NDRB's review of [his] discharge," (2) applied "the presumption of regularity," and (3) concluded that Plaintiff was "properly notified of the basis of the separation" and was "afforded the right and opportunity to consult with counsel and appear before a board." AR 7. The BCNR noted that Plaintiff did not claim that he was "denied the opportunity to challenge" the June 1, 1988 "NJP charges before a court martial" or "to appeal the NJP findings." *Id*.

As for the discharge itself, the BCNR explained:

> The Board noted that your chain of command had knowledge of your prior treatment for alcohol abuse and nonetheless elected to pursue NJP. The Board concluded that the second NJP proceedings were properly executed and your behavior established a sufficient basis for initiating separation on the basis of Alcohol Rehabilitation Failure. The Board determined that even in consideration of your prior honorable service and the mitigating factors you assert in your application, the general characterization of service is supported by your non-compliance with your alcohol rehabilitation treatment.

It therefore concluded that Plaintiff "did not establish an error or an injustice that warrants corrective action." AR 7.

Plaintiff has cited nothing in the administrative record to contradict the bases of the BCNR's findings; indeed, his own exhibits buttress them. Plaintiff's Exhibit 2 (ECF No. 18-1) is the retention warning notice that bears his witnessed signature dated January 5, 1988. In Exhibit 4 (ECF No. 18-2), moreover, Plaintiff acknowledges by his signature on June 3, 1988, that he "received" the Navy's proposed action for administrative separation. And in Exhibit 5, Plaintiff

acknowledges (1) that he was being considered for an administrative separation that "could result in characterization of discharge as General by reason of [his] Commanding Officer's [NJP] awarded on 1 June 1988 (alcohol related)"; (2) that if approved, the separation would "result in [his] discharge for alcohol Abuse Rehabilitation Failure" and "the characterization of [his] service" as "General"; and (3) that he was "afforded" certain rights, including the right to consult with counsel, to submit statements, to request an Administrative Board, and a minimum of two working days to respond to the Proposed Action notice. ECF No. 18-2 at 8-9. Plaintiff elected only the "right to obtain copies of documents that will be forwarded to Commander, Naval Military Personnel Command, supporting the basis for the proposed separation" and checked, initialed, and circled "I . . . do not object to this separation." *Id*. at 9.

Additionally, Plaintiff has not shown "by cogent and clearly convincing evidence that [BCNR's] decision was the result of a material legal error or injustice." *Doyle v. England*, 193 F. Supp. 2d 202, 207 (D.D.C. 2002) (citation and internal quotation marks omitted). He posits that the NJP resulting in the separation decision "was an illegal action" supposedly because "[n]o order exists by the Navy Medical Department" to abstain from alcohol while on the Antabuse regimen. Pl.'s Factual Stmt. at 2-3, ECF No. 34 (underline in original). But this is not the proper forum to collaterally attack the NJP imposed by Plaintiff's commanding officer. *See Brannum v. Lake*, 311 F.3d 1127, 1131 (D.C. Cir. 2002) (opining that the "prohibition" against civil courts reviewing "the acts of court martial, within the scope of its jurisdiction and duty . . . surely includes challenges to non-judicial punishment offered in lieu of a court martial") (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) (internal quotation marks and alteration omitted)). The D.C. Circuit instructs, moreover, that a serviceman's "personal beliefs about his orders afford him no immediate recourse to relief in federal court. When he disobey[s]

the orders of his superiors, he face[s] discipline and court-martial, and he cannot . . . seek judicial intervention before seeking relief in the system of military justice." *New v. Cohen*, 129 F.3d 639, 646-47 (D.C. Cir. 1997). And under the UCMJ, "[a] person . . . who considers his [non-judicial] punishment unjust or disproportionate to the offense may, through the proper channel, appeal to the next superior authority[.]" 10 U.S.C. § 815(e).

In this case, the Court must "determine only whether the Secretary's decision-making process was deficient, not whether his decision was correct." *Kreis*, 866 F.2d at 1512. The administrative record amply supports the BCNR's denial of Plaintiff's request for corrective action in accordance with applicable law. Plaintiff has offered no "clear and persuasive evidence to the contrary[.]" *Doyle*, 193 F. Supp. 2d at 207 (citation omitted). Applying, as it must, " a particularly deferential standard of review," *Piersall*, 435 F.3d at 325, the Court finds that the Secretary is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted. A separate order accompanies this Memorandum Opinion.

_____s/_____
ROYCE C. LAMBERTH
Date: September 3, 2019          United States District Judge